Good morning, all, and welcome to the Ninth Circuit. Before we begin, Judge Bybee and I would like to thank Judge Bennett from Maryland for sitting with us. It's really great to have you, and it's a wonderful help to the Court. Thank you very much, and it's always an honor to sit with the Ninth Circuit. It's not the first time and it won't be the last, and I'm very honored to be here. Thank you. That's good to hear. I'll remember my glasses next time I talk to you. The first case for argument is Oracle v. Rimini Street, Inc. Mr. Perry, whenever you're ready. Judge Bumate, I may have pleased the Court. Our principal submission today is that the district court's refusal to apply TiVo's colorably different standard requires reversal of the entire contempt order for three reasons. First, the district court's ruling that TiVo is limited to patent cases, that's a DR-71, conflicts with eBay, in which the Supreme Court held that patent and copyright injunctions are subject to the same standards, and a host of other Supreme Court decisions, including one in this very case, holding that copyright and patent cases are subject to the same rules. Second, the Supreme Court has instructed courts to conduct a, quote, fair ground of doubt inquiry in all contempt cases. That was in the California artificial stone case, a patent case, but in the Taggart case, which came out of this court, the Supreme Court held that it applies in bankruptcy cases and all cases. And TiVo implements that directive to ensure that design around efforts are encouraged and protected, a concern that both copyright and patent law shares. Third, Oracle failed to prove that the conduct at issue here is not more than colorably different than the conduct adjudicated in the first trial and appeal, which is why Oracle fought tooth and nail against application of the TiVo standard. We raised this issue, Your Honors, five times in the district court. Oracle refused to engage with it and refused to put on its proof, which it bore, of course, by clear and convincing evidence. Oracle's remedy, TiVo makes clear, is in the second infringement proceeding, not contempt. And in fact, since this case was briefed, the second infringement trial has taken place. All of these issues in process 2.0, the current support model being provided by Romini Street, are before the district court in an infringement trial. This contempt proceeding was unnecessary, and frankly, the train jumped the tracks at the outset when the court refused to apply TiVo. When we look at the conduct that was held to be contumacious, and to put it in context, Your Honor, during the three years of the injunction, Romini Street provided tens of thousands of updates a year for hundreds of clients, and we are here today talking about six files on Romini's systems. Okay, so that's just part of the order of magnitude issue. And none of them, none of them was adjudicated in the first case. The J.D. Edwards files, the district court admitted were not adjudicated in the first case, and then we have now been under an order that de minimis copying, which does not even violate the Copyright Act, is subject to contempt sanctions. This court already held in a previous appeal that conduct that does not violate the Copyright Act can't be enjoined, and we think that this part of the ruling violates the mandate rule as well as common sense, given that ruling. So in that case, the district court did not find sanctions, did not hold you in contempt or remain in contempt. So generally there's a rule in the Ninth Circuit we don't, you can't appeal an issue which you prevail. Why should we look at that case? Two reasons, Your Honor. First, the court's ruling is very clear that Romini Street may not include snippets, which are these markers, right, included in the technical specifications for where to declare it, and that the court will hold us to sanctions of the quote highest order if we do so in the future. As the trial evidence makes clear, this is part of the Romini support model, so that we are under a clear and present legal ruling that the current support model violates the injunction. Second, we are subject in this case to an adversary that will seize every advantage. That's not a criticism, but let's look at the OLSA, the Olsa ruling, which is the third issue I wanted to talk about today. You know, on summary judgment way back when, in 2014, the district court ruled that the database files at issue were downloaded pursuant to a developer license and not pursuant to the OLSA. And so when we came up on appeal, this court said that we couldn't appeal the developer license issue and the OLSA was not before the court. Now, Oracle is taking the position that we have waived the OLSA argument, even though we were never held liable under the OLSA at any point in the history of this litigation, simply because the court made a statement about it in a summary judgment order seven, eight, nine years ago that was not subject to appeal. We are very concerned that the same thing will happen again, Your Honor. If we don't appeal it now, Oracle will argue in the future that we have waived it because we had the opportunity to do it. We certainly want to comply with the law. We want to comply with the injunction. This has been, you know, 13 years of litigation, of kind of whack-a-mole, Your Honor. As we try to comply, Oracle won't tell us how. It simply tells us how not. But again, that's what an infringement trial is for. And I think one of the most important things, to come back to my Thiebaud point, is Thiebaud is the means by which courts in intellectual property cases distinguish between contempt proceedings and infringement proceedings. California Artificial Stone, that Supreme Court, made very clear that usually the rights holder's remedy is in infringement, not in contempt, precisely because once there's a previous ruling of infringement, it is the defendant's right to design around that ruling and come up with a new way to do it. That helps competition. That helps innovation. That lowers prices. Counsel, what does Thiebaud get you, though? In this case, the district court found that Romini violated the injunction knowingly and intentionally and willfully, and that seems to be what Thiebaud is trying to get at, making sure that it's not an inadvertent error.  Certainly, Your Honor. If we look at Thiebaud itself, the ruling, and pages 882 and 83 are the key parts of the opinion, it provides the rubric, the metric that the district court has to analyze and then, of course, that this court can review on appeal, which is something we, frankly, don't have in this case. We sort of have this mishmash. What the court says in Thiebaud is when one or more of the elements previously found to infringe has been modified, the court must make an inquiry into whether that modification is significant. That's exactly what we had here. We had an element found to infringe, local hosting, and generic environments. There were significant modifications made to that, and the court says if it is significant, then contempt is inappropriate. That's because the remedy for the rights holder, the copyright holder, the patent holder, is in a second infringement trial, not in a contempt proceeding. And all of that, by the way, it is the rights holder's burden to prove by clear and convincing evidence. What was adjudicated in the first trial, whether there was a modification that was significant, and whether contempt is appropriate. None of that happened in this case. But if the injunction is clear, and I know you're challenged on some of the cases, but why would you need a second infringement trial if you clearly, willfully violate a clear injunction?  In which it was very clear that Oracle, over and over again, was trying to expand the scope of the case, including the injunction to capture unadjudicated conduct. And Romini Street, over and over again, fought that. And we finally came, and Judge Hicks made this ruling six times in his order to show cause orders, to the point that the injunction only reaches conduct that was adjudicated in the first trial, and affirmed by this court on appeal. He says that at ER 47, 67, 68, 90, 62, elsewhere. Over and over again. And that was, the parties litigated that issue, you know, to the fare-thee-well, and Romini Street won it, right? And what TiVo does first, TiVo makes that analysis unnecessary because TiVo essentially imposes that burden as a matter of law. But then second, again, it provides a framework for that determination rather than having it sort of be ad hoc or loosey-goosey. And the reason it matters, again, if we go back to the specific conduct here, J.D. Edwards clearly not litigated in the first trial, clearly not affirmed on appeal. A straightforward application of TiVo says the whole J.D. Edwards analysis had to go into the second infringement trial rather than contempt. It's just a gating issue as to which procedure is placed. Counsel, your time is running down. I do want to give you a chance. Let's suppose for purposes of my question that I don't accept your argument on TiVo. So would you tell me about where the district court made its errors on the cross-use? That would be Issues 1 through 4. And on Issue 8, that's the Australian Bureau of Statistics. Yes, Your Honor. If I could start with the latter one, which is the Oracle database file. I mean, here's the clearest example. And again, under TiVo or under the court's own ruling of previously adjudicated conduct, the court acknowledged that the conduct here was strikingly different than that adjudicated in the first trial. That's at ER 50. Strikingly different. Contempt is not, certainly not in this case, for conduct that is strikingly different than the previously adjudicated trial. And it's certainly not for licensed conduct. The OLSA, the Oracle database files are covered by the OLSA. A plain, straightforward reading of the OLSA, as this court read the J.D. Edwards and Siebel and PeopleSoft licenses in the previous case, allows Rumini Street to provide precisely the support services that are being done here. The court held us in contempt for conduct that wasn't adjudicated and that is licensed. So it's a two-for-error, if you will, Your Honor. And for both of those reasons, whether or not we look at it through the TiVo lens, the OLSA ruling has to be set aside. As to the cross-use, this is where, you know, this history, this case has been going on for a long time. If I can try to unpack the terminology a little bit. The issue in the first case was environments. This court said that at 879 Fed Third at 956, three separate times in the operative, you know, definition of cross-use. And an environment, a development environment, is the entire program, thousands of files all working together, executable, in order to provide these services. And what Rumini was doing at the first trial was creating these entire environments, generic, not tied to any client, not used for any client, to do the work, and then sending the updates out to various licensed clients. And that is what the court in the 2014 summary judgment order held unlawful. That's what this court affirmed. After that, Rumini totally changed his process. So there are no environments on Rumini's systems, period, full stop. Every environment is on a client system. Clients all have licenses. Clients all have licenses that allow third parties to work with those environments. The only issue now on cross-use is this quirky situation that apparently has come up three times, where a Rumini-written file, and it's important to note that all of the files at issue here, these are not Oracle files, these are Rumini files, was tested in an environment for a single client, that it turned out didn't need that update down the road. And there's a huge debate about whether that's infringing. There's a huge debate about whether that's subject to the injunction. Again, that's in the second case. Actually, that was a good part of the trial that happened in December, whether those kind of one-off situations, whether it matters, the subjective intent. What it's not, Judge Bennett, or excuse me, Judge Bybee, is the conduct that was adjudicated in the first trial. But, counsel, why does that matter? I mean, the injunction is pretty clear. It says that you should not use these works other than a specific licensee's own computer systems. Under any definition, what you're describing of using one client's environment for another client violates the injunction. No, Your Honor. The district court has ruled, with respect, the district court has ruled over and over again that if three clients need the update, Rumini has to start someplace. So it can start in client A and then propagate them out to client B and client C. That is not cross-use. That is not infringement. That is not violation. Well, in this case, you've made a finding that you didn't need it for that specific client. I think the city of Oregon or Eugene or something. So that's why I called it the quirky situation where the development starts in a particular client and it turns out that client doesn't need the update. We think that's not infringement at all. It's certainly not violating the injunction because the subjective intent of an engineer never matters for copyright infringement. If at the time the work was done, the update was in scope. In the city of Eugene, for example, these are tax updates, annual tax updates. Rumini Street is contractually obligated to provide annual tax updates to the city of Eugene. So they're in scope at the time they're prepared. It finds later. Essentially, I gather the point is, as I understand it, is that essentially it's a de minimis use and the scope of the injunction has been unfairly expanded, essentially. Isn't that your argument? It is certainly that the scope of the injunction has been expanded to cover conduct. I don't mean as to 1 through 4 and the cross-use, but as to 8. That's your point. As to 8, 8 was never adjudicated. There was no also license issue ever presented in the case previously. Your Honors, I'm running out of time. I would like to just point out the sanctions are completely unsupportable under this court's decision in general signal, and otherwise they're paid to Oracle even though Oracle put on not one peppercorn's worth of evidence of harm. That's a punitive sanction. Even if all the contempt findings were upheld, we would submit the sanction has to be reversed, and if I could reserve the balance of my time. Thank you, Your Honors. Thank you. Thank you, Counsel. Ms. Kummer. May it please the Court. Good morning. My name is Rachel Kummer, and I represent Oracle. Your Honors, Judge Hicks absolutely did not abuse his discretion. There is no mishmash in his opinion which should be affirmed. As Judge Hicks held, Remini's contemptuous conduct was extensive, deliberate, and pervasive. Remini repeatedly infringed Oracle's copyrights in essentially the same manner that the court and a jury previously determined was unlawful. Judge Hicks has presided over almost 11 years of copyright litigation between Oracle and Remini regarding Remini's serial infringement. He issued the permanent injunction, which this court affirmed with minor modifications, and having now held Remini in contempt of that injunction, his order should be affirmed. Your Honors, Judge Hicks was not loosey-goosey below. In these contempt proceedings, he was thorough and careful. He issued an order to show cause on 10 discreet issues. Then, he held a seven-day hearing, which he called a bench trial, and then issued an order that is detailed, in which he discharged five issues and held Remini in contempt on the other five. It is well established that where, as here, the same district judge enters an injunction that later interprets that injunction, he is entitled to broad deference. Your Honors, Remini's arguments for reversal are simply wrong. They argue for the wrong legal standard. TiVo is an out-of-circuit patent case. Also, Remini argues that Judge Hicks expanded the injunction to prohibit lawful conduct never previously The fact that TiVo is out-of-circuit, that doesn't really help us very much. Is there anything contrary in our law? Well, Your Honor, no court has ever held that the TiVo standard that is in the patent context for whether something is colorably different would be applied to a copyright infringement case. In our circuit here, the Ninth Circuit, there's only one other case that is considered whether TiVo should apply in the copyright context, and that court also held that it shouldn't. Fundamentally, patent cases are different than copyright cases in the injunction context. In a patent injunction, the court enjoins a specific infringing product, like a knockoff TiVo to record a television show. In contrast, in the copyright context, courts enjoin infringing conduct. So, no matter how many times Remini protests the contrary, the injunction does not enjoin what Remini calls its Process 1.0. The district court was very clear about this. It enjoins Process 1.0 conduct. I mean, on appeal, this court's opinion doesn't ever use the word Process 1.0, and the injunction doesn't either. So, in these contempt proceedings, the district court was not charged with comparing Process 1.0 with what Remini has now dubbed a Process 2.0. Instead, the district court was charged with comparing Remini's ongoing conduct with the injunction by which it is bound, and the district court appropriately and correctly found that the injunction was violated multiple times. Well, as to four of those, as I understand it, the district court found that there was still the same kind of violation in terms of cross-use as to four of those, correct? Yes, Your Honor, that is true. One of those, I think it's number eight if I'm not mistaken, has to do with what's contended to be de minimis copying, correct? In the de minimis context, this court does not have jurisdiction. Okay, there were two issues considered by the district court, Issues 7 and 9, about Remini's ongoing copying of our J.D. Edwards source code. With respect to Issues 7 and 9, the district court discharged its order to show for cause. Because the district court discharged, this court lacks 1291 jurisdiction because there is no final and appealable order as to those issues. This court also lacks jurisdiction under 1292A1 because the district court interpreted its injunction rather than modified it. How can you say that this was not a modification? If you look at the prior injunction, it says nothing about de minimis copying. And then the district court was very clear, like from now on, de minimis copying is now a part of the injunction. That seems to be a very clear modification. Respectfully, Your Honor, we have to disagree. If you look at the plain language of the injunction, it says, Remini shall not copy J.D. Edwards' source code. All right? So — But that's under the background of copyright law, where de minimis — and you would agree under copyright law, de minimis copying is allowed, right? I would agree that under copyright law, de minimis copying is non-actionable, Your Honor. But Remini is not an elementary school student who's, like, copying pages for a book report. That is not what's at issue here. Is it not the case following up on which, Judge, let me tell you a question. Wasn't it essentially that Judge Hicks found that there had been a violation by emailing a copyrighted database file from one employee to another employee? Aren't they the underlying facts? Your Honors, that's a separate part of the case. The emailing part does deal with cross-use, all right? So that's not the de minimis section of the case. That has to do with the violation of Paragraphs 4 and 6 of the injunction, which has to do with Oracle's PeopleSoft software. Now, Paragraph 4 prohibits Remini from using a specific licensee's PeopleSoft software for any purpose other than the specific licensee's own internal data processing operations. And Paragraph 6, and I think this is important, among other things, says that Remini is, quote, specifically enjoined from using a specific licensee's PeopleSoft environment to develop or test software updates or modifications for the benefit of any other licensee. So that's what this Course has referred to as cross-use. And in its prior opinion, this Court held that there were numerous forms of cross-use. But the type of cross-use that is at issue and for which they were held in contempt here is exactly what was adjudicated below. Now, Remini contends and includes in its brief a little chart at page 9 where they argue that the prior trial involved generic environments where modifications were developed and then provided to multiple clients. And to be entirely clear, Your Honors, that is, in fact, enjoined cross-use. But it's not the only type of cross-use that has been adjudicated or enjoined. Quite the contrary. Way back in 2014, in its summary judgment order, the District Court held that when Remini went into its then-client, City of Flint's environment, their development environment, and developed certain modifications and provided those to other customers, that was infringing cross-use. Now, if you take the City of Flint and replace it with the City of Eugene, that's the exact conduct, once again, that Remini has been held in contempt for almost eight years later. Remini does not contest or dispute that it went into the City of Eugene's environment and developed modifications which it then provided to other customers. That is an infringement of the plain language of the injunction. Counsel, would you turn to issue number eight, and I'll tell you specifically what my concern is. My concern is that Judge Hicks, on page 48 of his ruling, said that the record does not support a finding that Remini ever informed Australian Bureau of Statistics not to upload such files to its systems, and that there seems to be quite a bit of conversation between your expert and Remini's counsel about warnings that she did not discover, and I'm wondering why this finding isn't clearly erroneous. There's a lengthy conversation with your expert in which she says, well, she didn't see that warning. She didn't see this warning. I didn't see that warning. I can give you the page here. I'm on page 391 of the record, I think. I would say as an initial response, Your Honor, the fundamental point with respect to the OLSA licenses is that Remini has entirely waived its arguments in this regard, as this Court previously held. You think they've waived this argument? I think it waived its argument that its OLSA licenses permit the conduct that it has engaged in. Well, I'm asking specifically about the finding number five on page 48, the record does not support a finding that Remini ever informed Australian Bureau of Statistics not to upload such files to its systems, and your, let's see, this is a cross-examination by Mr. Vandeveld. So that's 571 warnings to clients to not upload Oracle or other third-party IP to Remini, correct? Answer, I see that here, counsel. And none of that was presented to the Court. Answer, I did not present that to the Court. Yes, counsel, that's correct.  I apologize, Your Honor. Can you please, I appreciate your clarification of which part of the record you were referring to. Do you mind repeating your question with respect to what you're asking is clearly erroneous? Right. Well, if the judge said the record does not support a finding that Remini ever informed the ABS not to upload such files, and there is evidence in the record that there were such warnings, isn't that finding clear error? Well, Your Honor, I would say, without having that exact record site in front of me, I would say I don't believe that Judge Hicks engaged in clear error in this case. He had sustained clear error. Well, I understand that. But how do you do that in light of what I've just read you? If the judge said there's no evidence of warnings, and there is evidence of warnings, Judge Hicks has written a very, very thorough thing here. But this looks like this might be clear error. I'm just wondering what your defense is of that. I suppose, Your Honor, our defense would be that it is within Judge Hicks' discretion to make — To ignore the evidence that's in the record when your expert admits that she's missed all the warnings that were, in fact, provided to the client? Well, no, Your Honor. I mean, obviously, Judge Hicks shouldn't ignore evidence that was in the record. We don't believe that he did so. He made many very specific, careful, detailed findings. Yeah. Everything except for this paragraph looks — I mean, there are a lot of really good findings here, but this one looks like it's wrong. So I'm trying to figure out what I do with issue number eight. Even — Your Honor, frankly, let's just assume for a second that there was clear error with respect to that one factual finding. It simply doesn't matter. The main point with respect to the OLSA license's argument for the Oracle database file is that they violated the plain language of the injunction. All right? First of all, the injunction prohibits Remini from reproducing, preparing derivative works from, or distributing Oracle database software. They cannot have Oracle database files on their internal systems, and admittedly, they did. Their only defense of this conduct is to try to go way back in the record — I mean, actually — to try to argue that this court has to interpret their customer's licenses to see whether their customer's licenses would have permitted this conduct. Point number one, they waived that argument as this court held years ago, but even as a factual matter, the OLSA licenses do not permit the conduct that has been raised here with respect to issue eight. That is, the OLSA license, as a factual matter, would permit only the licensee and not Remini's to make copy of Oracle's database software. And then that software can only be used for its licensee's internal business operations. So, yes or no? But doesn't the license say, you may allow your agents and contractors to use the programs for this purpose, and you are responsible for their compliance with this agreement in such use? That's right. That would be for their internal business operations. But wouldn't Remini be one of their agents or contractors? Yes, but they can't. They can't have those files on their own systems. They can't have them on Remini's systems under the injunction this court issued. Well, how else would these contractors and agents use it? I mean — Oh, Remini can access its client's files on their client's systems. That's the whole point of the way this has been structured going forward. I don't know. The license says use, and when you allow your contractor or agent to use it, you're going to be sending files to each other, and it's going to happen. It's necessarily going to end up copying things into their database, I mean, into their computers. Respectfully, Your Honor, what matters is not what their customer's license say is a factual matter now. This court is not charged with reinterpreting a license agreement. This court is charged with reviewing under an abusive discretion standard whether the district court correctly concluded that Remini breached, was contemptually breached the injunction, and they did breach the plain language of paragraph 15, which precludes the reproduction of Oracle database files on Remini's systems. I still don't understand why this doesn't fit into the OLSA use for contractors and agents. Well, there's a difference. Remini is able to use files that are located on its customer's systems. It could use a file to support its customers as long as it doesn't bring that file onto its own system and be in compliance with the injunction. Are you making an argument under the injunction or under the licensing agreement? I would say both. Under the licensing, under the injunction, they are not allowed to have the file on their own systems, and they can comply with the license agreement by using this file on their client system for their internal business operations. Sorry, if I could just follow up. Under the licensing agreement, where is the restriction on having the contractors or agents use it in their environments? It's sort of the same idea that we had adjudicated with respect to Issue 1, which is local hosting issue. The language, internal business operations, has been interpreted to conclude that the files need to stay on the customer's systems, not brought over into Remini's systems. And that's true with respect to Issue 1, which while we didn't discuss about here today, I think is very important. That's where there were multiple issues of willful infringement that Remini does not even contest under established copyright law. Thank you, Your Honors. Thank you, Counsel. Three very quick points, Your Honors. First, as to the point my friend just finished on, there is no local hosting prohibition in the Oracle database license. In the last appeal, this Court vacated the portions of the injunction that purported to impose such a restriction for J.D. Edwards and Siebel. Application of that ruling here requires reversal of Issue 8. Second, Judge Bybee, it's absolutely the case. ER-323, in other words, the Remini systems warn clients, please do not upload any third-party software. That is part of the intake procedure and elsewhere. Yeah. Counsel, and I'm a little puzzled by Judge Hick's order, but under those conclusions, he says that it's clear and convincing that it was not. It was not willful. And the problem is that Remini went ahead and copied it, and once they saw it, they should have sequestered it. Yes, Your Honor. And they didn't. So it didn't find you for a willful violation, but it did find you for a technical violation. Technical violation, and then once it's forwarded. So maybe the finding is clear error, but is it harmless error? It's not harmless, Your Honor, because it goes to the whole point we were discussing earlier or that I was discussing earlier about putting this in context. You know, when a client emails a file to us, we have no control over that. We receive it, we look at it to see what it is, and then that's it. We had four or five examples of that for which we're being sanctioned $630,000. That's not contempt at all. It's certainly not willful contempt. There's certainly no harm to Oracle. This is all a punitive exercise that is not supported by the record and putting this stuff in context, as this Court's dual-deck decision requires. You know, if we were here for the first time, that might be good, but you're not. I mean, you've been through a trial. We've been up and down to the court, and the fact of the matter is you do have an injunction against you. You're under additional restrictions that your competitors might not be under because you have past violations. That's a problem for you. It is, Your Honor, with two comments about that, though. We have been up and down, and the rulings have gone both ways, and one of the rulings this Court has made  can't be part of the injunction. That's from the access provision from the last appeal, and that applies to the de minimis issue. And the other is that license conduct can't be part of the injunction. This Court said that in the first appeal, and that goes to the Oracle database issue as well as we submit to the cross-use issue. This all comes back around to TiVo, and I'm going to sound one note, but if I could finish on it. This Court cannot affirm the injunction we submit without deciding whether or not TiVo applies to copyright cases. It's a pure legal issue. It's reviewed de novo. Ms. Kummer's exactly right. No court, no appellate court, has ever said that it doesn't. But no appellate court has ever said that it does. It's here for the first time in front of this Court. It's squarely raised. It was preserved six ways to Sunday. It was decided wrongly by Judge Hicks, and it is dispositive in this case. You didn't hear my friend say one word to deny that if TiVo applies, the whole contempt order has to be vacated, reversed, and either sent back or just set aside. And the reason for that, and I realize I'm overstaying my welcome, is it's a gating mechanism. It shows the path between contempt on the one hand and infringement on the other. Romini will defend its conduct. We had a trial in December on the second process, and all that's happening, the Court will decide whether or not it's infringement. It is not contempt, however. The contempt proceeding was the wrong direction. The train jumped the tracks going back to TiVo, solves that problem, and wipes the board clean. Thank you, Your Honors. Thank you, Counsel. This case is submitted.
judges: BYBEE, BUMATAY, Bennett